IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT
_____

CASE NO. 14-13158
_____

RICHARD LOBERGER and RAYMOND MILLER,

*Plaintiffs/Appellants*,

v.

DEL-JEN, INC. and J&J MAINTENANCE, INC.,

*Defendants/Appellees*.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
HONORABLE RICHARD SMOAK
(5:13-cv-299-RS/CJK)
_____

**APPELLANT'S INITIAL BRIEF**
_____

Marie A. Mattox
James P. Garrity
Marie A. Mattox, P.A.
310 East Bradford Road
Tallahassee, FL 32303
(850) 383-4800
(850) 383-4801 (facsimile)
marie@mattoxlaw.com
jim@mattoxlaw.com

**C-1**

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Appellants Loberger and Miller, pursuant to FRAP 26.1 and 11th Cir. R. 26.1-1, 26.1-2 and 26.1-3, hereby files their Certificate of Interested Persons and Corporate Disclosure Statement:

1. Del-Jen, Inc. (Defendant)

2. J&J Maintenance, Inc. (Defendant)

3. James W. Seegers (Counsel for Defendant Del-Jen, Inc.)

4. Baker & Hostetler, LLP (Counsel for Defendant Del-Jen, Inc.)

5. Patrick L. Lail (Counsel for Defendant J&J Maintenance, Inc.)

6. Sean M. Libby (Counsel for Defendant J&J Maintenance, Inc.)

7. Elarbee, Thompson, Sapp & Wilson, LLP (Counsel for Defendant J&J Maintenance, Inc.)

8. Richard Loberger (Plaintiff)

9. Raymond Miller (Plaintiff)

10. Marie A. Mattox (Counsel for Plaintiff)

11. James P. Garrity (Counsel for Plaintiff)

12. Marie A. Mattox, P.A. (Counsel for Plaintiff)

13. Honorable Richard Smoak (District Court Judge)

There are no publically traded corporations involved in this case; however, Defendant Del-Jen is a subsidiary of Fluor Enterprises, Inc., which owns 10% or more of Del-Jen and is a publicly traded corporation. [Doc. 9].

Defendant J&J states that no publicly traded corporation owns 10% or more of its stock. [Doc. 7].

**C-2**

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant believes oral argument will assist the Court's disposition of this case of first impression.  Oral argument will assist in focus and will test the basis and validity of the contentions of the parties.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PARTIES AND
CORPORATE DISCLOSURE STATEMENT…………………………….C-1

STATEMENT REGARDING ORAL ARGUMENT…………………………..C-2

TABLE OF CONTENTS……………………………………………………...i

TABLE OF CITATIONS……………………………………………………iii

STATEMENT OF JURISDICTION…………………………………….…...vi

STATEMENT OF THE ISSUES……………………………………………..1

COURSE OF PROCEEDINGS BELOW………………………………………2

STATEMENT OF THE FACTS……………………………………………....3

STANDARD OF REVIEW…………………………………………………11

SUMMARY OF ARGUMENT…………………………………...…………..11

ARGUMENT……………………………………………...……………….12

I.    THE DISTRICT COURT ERRED BY RESOLVING FACTUAL
      DISPUTES AND FAILING TO TAKE THE FACTS AND INFERENCES
      IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFFS
      …………………………………………………………...…………12

II.   PLAINTIFFS ARE THE VICTIMS OF AGE DISCRIMINATION……....15

      A.    Plaintiffs Made Prima Facie Case of Age
            Discrimination ………………………………………….....…15

      B.    Del-Jen Liable for Age Discrimination …………………….....…20

      C.    J&J Liable for Age Discrimination……………………………....21

i

III.    PLAINTIFFS ARE THE VICTIMS OF RETALIATION…………….....23

IV.    DEFENDANTS' REASONS FOR NEGATIVE REFERENCES AND FAILURE TO HIRE ARE PRETEXT FOR DISCRIMINATION……........26

CONCLUSION……………………………………………………………...32

CERTIFICATE OF COMPLIANCE…………………………………………...33

CERTIFICATE OF SERVICE……………………………………………………34

## TABLE OF CITATIONS

**U.S. Supreme Court cases:**

Anderson v. Liberty Lobby, 477 U.S. 242 (1986)……………....…………..12, 14

Burrage v. United States, 134 S. Ct. 881 (2014)………………………...………..31

Castaneda v. Partida, 430 U.S. 482 (1977)……………………………..…….18, n.1

Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009)……………………….…….31

International Bhd. Of Teamsters v. United States, 431 U.S. 324 (1977)…………15

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)……………....…15, 17

O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308 (1996)…….18

Patterson v. McLean Credit Union, 491 U.S. 164 (1989)………………………...…23

Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133 (2000)……………..27, 32

St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)…………………………...27

Staub v. Proctor Hosp., --- U.S. ----, 131 S.Ct. 1186 (2011)……………………..21

Swiekiewicz v. Sorema, N.A., 534 U.S. 506 (2002)……………………….…..16

Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981)..….23, 26, 30

Tolan v. Cotton, 134 S. Ct. 1861 (2014)………………………………..…...……12

University of Texas Southwestern Med. Ctr. V. Nassar,
       570 U.S. ----, 133 S.Ct. 2517 (2013)…………………………………….....31

Watson v. Fort Worth Bank and Trust, 487 U.S. 977 (1988)……………………..23

**Federal Circuit Court cases:**

Bailey v. USX Corp., 850 F.2d 1506 (11th Cir. 1988)……………………..……20

Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999)……………...…..14

Carter v. City of Miami, 870 F.2d 578 (11th Cir. 1989)…………………..……..19

Combs v. Plantation Patterns, 106 F.3d 1519 (11th Cir.1997)……..…………27, 30

Cottrell v. Caldwell, 85 F.3d 1480 (11th Cir. 1996)………………………….…..16

Damon v. Fleming Supermarkets of Florida, Inc.,
    196 F.3d 1354 (11th Cir. 1999)…………………………………..…..…..17, 19

Douglas v. Anderson, 656 F.2d 528 (9th Cir. 1981)………………………..….…..19

EEOC v. City of Independence, Mo., 471 F.3d 891 (8th Cir. 2006)……………....22

EEOC v. Yenkin-Majestic Paint Corp., 112 F.3d 831 (6th Cir. 1997)……………30

Ford v. General Motors Corp., 305 F.3d 545 (6th Cir. 2002)…………………....25

Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261 (11th Cir. 2008)….23, 24, 25

Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435 (11th Cir. 1985)…………19

Hillig v. Rumsfeld, 381 F.3d 1028 (10th Cir. 2004)………………………….…..20

Howard v. BP Oil Co., 32 F.3d 520 (11th Cir.1994)……………………………...27

Jones v. Oklahoma City Pub. Schs., 617 F.3d 1273 (10th Cir. 2010)……………..31

Jones v. UPS Ground Freight, 683 F.3d 1283 (11th Cir. 2012)…….…..…....11, 14, 27

Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173 (3d Cir. 1997)………………..26

Leal v. McHugh, 731 F.3d 405 (5th Cir. 2013)……………………………………31

Martin v. Mecklenburg County, 151 Fed. Appx. 275 (4th Cir. 2005)………….…..25

iv

Moham v. Steego Corp., 3 F.3d 873 (5th Cir. 1993)…………………….…..20, 21

Morrison v. Amway Corp., 323 F.3d 920 (11th Cir. 2003)…………………….…14

Olmsted v. Taco Bell Corp., 141 F.3d 1457 (11th Cir. 1998)………….....……24, 25

Porter v. California Dep't of Corr., 419 F.3d 885 (9th Cir. 2005)………………...25

Sibley Memorial Hosp. v. Wilson, 488 F.2d 1338 (D.C. Cir. 1973)…………….…..20

Simmons v. Camden County Bd. Of Educ., 757 F.2d 1187 (11th Cir. 1985)…….24

Sims v. MVM, Inc., 704 F.3d 1327 (11th Cir. 2013)………………………....15, 21

Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011)………….…..15

Vessels v. Atlanta Indep. School Sys., 408 F.3d 763 (11th Cir. 2005)………...…26

Wichmann v. Bd. of Trs. of S. Ill. Univ., 180 F.3d 791 (7th Cir. 1999)………..…30

Walker v. NationsBank of Florida N.A., 53 F.3d 1548 (11th Cir. 1995)……….…28

Wilson v. B/E Aerospace, Inc., 376 F.3d 1079 (11th Cir. 2004)…………………16

**Statutes:**

28 U.S.C. § 1291…………………………………………………...………….…..vi

29 U.S.C. § 621………………………………………….……………………….2

42 U.S.C. § 2000e…………………………………………………...…………..2

Chapter 440, Florida Statutes ……………………………………...……………2

Chapter 760, Florida Statutes ……………………………………...……………2

**Other citations:**

FED.R.CIV.P. 56……………………………………………………..……………...1

# STATEMENT OF JURISDICTION

This case is a plenary appeal of a final decision of a district court of the United States, specifically, the United States District Court for the Northern District of Florida. Accordingly, jurisdiction lies under 28 U.S.C. § 1291.

## <u>STATEMENT OF THE ISSUES</u>

I.      Whether the District Court erred by resolving factual disputes and failing
to take the facts in the light most favorable to the Plaintiffs in
contravention of the standards and case law interpreting FED.R.CIV.P. 56.

II.     Whether the District Court erred in finding that Plaintiffs failed to prove
a prima facie case of age discrimination.

III.    Whether the District Court erred in finding that Plaintiffs failed to prove
a prima facie case of retaliation.

IV.     Whether the District Court erred in finding that Plaintiffs failed to show
pretext in Defendants' reasons for poor references and failing to hire
them.

## COURSE OF PROCEEDINGS BELOW

Plaintiffs Loberger and Miller filed their initial Complaint against both Defendants on September 5, 2013, alleging age discrimination and retaliation under Chapter 760, Florida Statutes, 29 U.S.C. §621 et seq., and 42 U.S.C. §2000e et seq. [Doc. 1]. Defendants filed their Answers the following month. [Docs. 5, 6]. Plaintiffs moved to amend their Complaint on November 25, 2013 to include a third count of Workers Compensation retaliation for Plaintiff Loberger against Defendant Del-Jen pursuant to § 440.205, Florida Statutes. [Docs. 15]. The Distrcit Court approved the amendment and Defendants filed their Answers to the Amended Complaint. [Docs. 17-19]. The Parties engaged in court-ordered mediation on April 18, 2014, which resulted in an impasse. [Docs. 32, 39]. Thereafter, both Defendants filed for summary judgment. [Docs. 40-44]. Plaintiffs filed their responses in opposition to Defendants' motions for summary judgment. [Docs. 54-60]. Defendant J&J sought leave to file a reply, which the District Court granted over Plaintiffs' opposition. [Docs. 61-64]. On July 2, 2014, the District Court granted summary judgment on Plaintiffs' age discrimination and retaliation claims and declined to maintain jurisdiction over Loberger's workers compensation retaliation claim; judgment for Defendants was entered the same day. [Docs. 83-84]. Plaintiffs timely filed their Notice of Appeal on July 14, 2014. [Doc. 87].

## STATEMENT OF THE FACTS

### Background

Plaintiffs Richard Loberger (Loberger) and Raymond Miller (Miller) (collectively, the Plaintiffs) were passed over to continue their employment for much younger workers despite the fact that they held significantly superior credentials than their younger co-workers. Loberger was born in 1946 and Miller was born in 1949. [Doc. 54-2 at 2; Doc. 54-3 at 3; Doc. 54-30; 54-31]. The incidents at issue in this case took place in 2012. [Doc. 54-2 at 2; Doc. 54-3 at 3]

Loberger and Miller worked for Defendant Del-Jen, Incorporated (Del-Jen) performing pest control services at Tyndall Air Force Base (TAFB). The Plaintiffs worked as Certified Pest Controllers; Loberger started working for Del-Jen on May 11, 1998, Miller started working on October 1, 1997 and both were terminated on November 13, 2012. [Doc. 54-2 at 2; Doc. 54-3 at 3]. The following day, Defendant J&J Maintenance, Incorporated (J&J) assumed Del-Jen's responsibilities at TAFB.

The general duties of a Pest Controller were to control weeds, insects, and vermin. [Doc. 54-19 at 66-67]. Loberger held pest control certifications in: limited lawn and ornamental, public health, right of way, fertilization, lawn and ornamental, general household pest control, and termite. [Doc. 54-19 at 64-65].

Miller held certifications in: GHP, termite, limited lawn and ornamental, public health, mosquito, right of way, fertilization, aquatic pest control. [Doc. 54-13 at 31-32]. The work at TAFB was divided into zones; Loberger's zone primarily focused on the flight line while Miller's zone included commercial and residential areas at the base. [Id. at 68-69].

Prior to J&J assuming Del-Jen's responsibilities, both Plaintiffs got along well with their younger co-workers, as well as their supervisor, Robert Bushway. [Doc. 54-13 at 50-53; Doc. 54-19 at 73-75]. Neither Plaintiff received any reprimands throughout their long tenure with Del-Jen. [Doc. 54-13 at 52; Doc. 54-17 at 23].

### Loberger's 2012 Injuries at Work

Loberger suffered severe bug bites while working on two occasions, once in Janaury 2012 and again in June 2012, in the course and scope of his work. [Doc. 54-18 at 50-51]. In January 2012, he reported the injury to Bushway that same day after he became ill. [Id. at 51-52]. Loberger went home because he was ill and was hospitalized a few hours later, where he stayed for three days. [Id. at 52-53]. Following his release from the hospital, he spent another three days at home before returning to work. [Id. at 53-54]. Loberger's wife talked to Bushway by phone regarding his hospitalization and Bushway flatly said he would not report the injury and allow a workers' compensation claim. [Doc. 54-22 at 21-23]. Ms.

4

Loberger expressed shock at Bushway's refusal, to which he responded that he was going to have a clean record at his shop and he was not going to have records of episodes like this, of men being hurt there. [Id. at 23-24]. Ms. Loberger was very upset because her husband was in the hospital with a work-related injury and could have lost his leg. [Id. at 25]. Bushway, for his part, pushed for Loberger to come back to work as quick as possible, even going to the Lobergers' doctor behind their back and telling him that Bushway needed Loberger back at work. [Id. at 26].

In June 2012 Plaintiff suffered another severe bite on the job, and again reported it immediately to Bushway. [Doc. 54-18 at 55-56]. This bite was even more severe and had Plaintiff Loberger in and out of the hospital for several weeks and did not return to work until mid-July 2012 because he developed MRSA infection. [Id. at 56-59; Doc. 54-22 at 41-42]. Loberger reported the injury and effects to Bushway and to Del-Jen's safety director. [Doc. 54-18 at 60-63]. Ms. Loberger talked to Bushway about this injury as well and Bushway became profane and insulting, telling Ms. Loberger that there was "no way in hell" he was filing a workers' compensation claim and that he thought the Lobergers' home was full of bugs anyway. [Doc. 54-22 at 43-47, 51-52]. At one point Bushway said Loberger was getting older now, and this would just be a common occurrence. [Id. at 66, 69]. Ms. Loberger also complained to someone in Del-Jen's personnel department, Alyse Wright, who said only that the issue had to go back to Bushway.

5

[Id. at 60]. At the time of his deposition, Loberger estimated his out of pocket expenses associated with the on-the-job injury to be about $23,000.00, because of Del-Jen's failure to submit the injuries as required under the workers' compensation statute. [Doc. 54-18 at 64].

### J&J's Hiring Process

In August 2012, Del-Jen held a town hall meeting and announced to the employees that their contract was not renewed and that J&J would be taking over the services under their contract. [Doc. 54-19 at 92-93]. The employees were told not to directly talk to any J&J representatives regarding their work but to refer them to Del-Jen or the project manager. [Id. at 93]. Bushway gave J&J employees, including Emmett Shaffer, a tour of the shop where Plaintiffs worked and they introduced themselves to all of the employees at the shop. [Doc. 54-20 at 2-3]. Thereafter, Shaffer distributed J&J applications to all Del-Jen employees; however, Plaintiffs testified that Bushway was the person who handed them the applications and directed them to fill it out and turn it in by October 12, 2012. [Doc. 54-11 at 28-29; Doc. 54-20 at 3-4; Doc. 54-28 at 3-4]. Plaintiffs did as Bushway directed and completed their applications on October 10, 2012. [Doc. 56-6 at 2-5; Doc. 54-10 at 2-7; Doc. 54-11 at 28-29, 32-33; Doc. 54-20 at 4]. J&J further released its own job description for the pest control positions. [Doc. 54-5].

J&J interviewed Plaintiffs at a local hotel in Panama City. [Doc. 54-20 at 6]. Loberger's interview was no more than fifteen minutes; Miller's interview lasted approximately five minutes. [Doc. 54-11 at 37; Doc. 54-17 at 56]. Loberger described it as a "sham" because the interviewer asked nothing they hadn't already read on his resume. [Doc. 54-19 at 55-56]. The interview was perfunctory and did no more than involve the interviewer simply reading Miller's resume, and asking him – at age 66, and with 22 years' experience – if he could do the job. [Doc. 54-13 at 78-79]. Other than that, Miller says the J&J interviewer intimated that they had other people to talk to and needed to get his over with, after just a few minutes, and it was in and out. [Id.].

J&J would have known from Miller's application and resume that he was retired military. [Doc. 54-10 at 2-7]. J&J also had both Plaintiffs' Social Security numbers from their applications, a tool allowing easy access to dates of birth. [Doc. 56-6 at 2-5; Doc. 54-10 at 2-7; Doc. 54-13 at 81]. Further, Del-Jen's lawyers asked Loberger to agree that J&J could ascertain his age from the in-person interview. [Doc. 54-18 at 8; Doc. 54-30; Doc. 54-31].

**Bushway's Ageist References For Plaintiffs**

Bushway provided recommendations to J&J regarding which employees in his department J&J should retain when they took over Del-Jen's contract; he was employed with Del-Jen at the time. [Doc. 43-4 at 1, 4; Doc. 54-25 at 5]. J&J

officials also say Del-Jen supervisors provided job references, and J&J senior official Emmett Shaffer says "…we sought the [Del-Jen] supervisors' input on the best employees in their respective shops." [Doc. 54-28 at 4]. J&J's top HR official, Denise Garza filed a declaration in another case likewise freely saying J&J sought and got "…input from [Del-Jen] supervisors." [Doc. 60 at 4-5].

On October 25, 2012, Bushway told both Plaintiffs that age and longevity were issues that J&J were concerned about and that he would have a hard time "fighting" for anyone who was retirement age. [Doc. 54-11 at 44-53; Doc. 54-12 at 11, 15-16; Doc. 54-17 at 63, 71, 80-81, 86-87; Doc. 54-20 at 31-32]. Bushway specifically told the Plaintiffs that they were at retirement age and they did not fit in with retaining long-term employees; they wanted younger employees who would "stick around for awhile." [Doc. 54-11 at 45, 50-51; Doc. 54-20 at 31-32]. The conversation was very clear to Miller, Bushway told him point blank that "age was an issue." [Id. at 53]. Loberger describe Bushway as "poisoning the well" for he and Miller through the job reference. [Doc. 54-17 at 59]. Plus, Bushway told Miller that J&J knew Miller's age. [Doc. 54-13 at 82].

Bushway was acting as an agent for his own employer, Del-Jen, when he was conveying the information regarding the Plaintiffs to J&J. [Doc. 54-12 at 4; Doc. 54-18 at 26]. Bushway was still an employee of Del-Jen when conveying comments regarding the Plaintiffs; indeed, other than the fact Bushway now works

8

for J&J, he didn't even tell Plaintiffs he had applied for a job at J&J. [Doc. 54-11 at 40-41; Doc. 54-12 at 4]. As Loberger described it, "Mr. Bushway is Del-Jen." [Doc. 54-17 at 71].

### J&J Selected Younger, Less Senior, Less Qualified Co-workers

Plaintiffs held vastly superior knowledge, skills, years of experience and abilities as compared to their younger co-workers who were retained by J&J: Andy Fox (20 to 24 years younger than the plaintiffs, depending on the plaintiff), Doug Bailey (11 to 14 years younger), and Robert Nowaczyk (9 to 13) years. [Doc. 54-4]. Both are substantially older than those selected, had all required certifications (unlike Fox), and had broad relevant skills. [Id.]. Miller even had experience supervising more than 100 people. [Id.].

In the District Court, J&J claimed it not only relied on Bushway's recommendations, but that it chose Fox because of the way he "presented himself" in an interview and that he supervised four workers." [Doc. 43-2 at 6]. However, these do not appear as criteria on J&J's job description. [Doc. 54-5].

### Plaintiffs' Internal Complaints of Age Discrimination

On November 3, 2012, both plaintiffs filed internal complaints of age discrimination regarding Bushway's job references about them to J&J. [Doc. 54-15]. They gave Bushway copies of their grievances on November 5, 2012. [Doc. 54-11 at 62-64]. Bushway did not say anything, but a few minutes later he

approached the Plaintiffs who were on break and told them, "gentlemen, I wouldn't be closing any doors," which Miller took to be a not so veiled threat. [Id. at 64-66; Doc. 54-18 at 50].

### Plaintiffs' EEOC Charges of Discrimination

Plaintiffs filed Charges of Discrimination on February 11, 2013, alleging age discrimination and retaliation. [Doc. 54-2; Doc. 54-3].

### Retaliatory Failure to Hire in 2013

In September 2013, Nowaczyk quit his employment with J&J and they posted the opening of this pest control position; both Plaintiffs applied. [Doc. 54-13 at 27-28, 30; Doc. 54-14 at 26-28]. Neither Plaintiff was hired; instead, J&J hired Thomas Spragg. [Doc. 54-13 at 28, 30]. Spragg was fifty-three years old at the time and by his own admission, he lacked two mandatory certifications, Right of Way and Public Health. [Doc. 43-14 at 2].

Bushway, who in September 2013 was a J & J employee, says he chose Spragg over the two fully-certified Plaintiffs because he "concluded [Spragg] could perform the job and would make a good employee, able to get along with me and with others," but does not explain nor provide any facts regarding what led to this subjective conclusion. [Doc. 43-4 at 9]. Bushway failed to schedule interviews with the Plaintiffs though he did interview Spragg. [Id. at 9]. Bushway admitted he

10

had knowledge of the pending discrimination claims by both Plaintiffs when he chose Spragg over them. [Id. at 10].

## STANDARD OF REVIEW

The standard of review of an entry of summary judgment is *de novo*. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1291 (11th Cir. 2012).

## SUMMARY OF ARGUMENT

Plaintiffs were the victims of age discrimination when their (then) current employer, Del-Jen, provided poor references to their prospective employer, J&J. These references were bogus and based on Plaintiffs' ages. Indeed, their supervisor, Bushway, told them so, stating that he could not support them because of their age and that they were nearing retirement. J&J directly solicited Bushway's input about the Plaintiffs, telling him that "longevity" was important because they wanted employees who were going to "stick around awhile." J&J then conducted sham interviews of the Plaintiffs, and failed to extend employment offers to them. However, J&J did hire Plaintiffs' younger, less credentialed co-workers. Further, after Plaintiffs filed Charges of Discrimination with the EEOC, a position finally became available at J&J; Plaintiffs once again applied and were denied the position based on either the continued age discrimination or in retaliation for their filing Charges. J&J then asserted bogus, after-the-fact rationales for failing to hire Plaintiffs. The District Court took all facts and

inferences in Defendants' favor and ruled against Plaintiffs. However, the facts in Plaintiffs' favor demonstrate material disputed facts which must be decided by a jury. Accordingly, the District Court's order should be reversed and this case remanded for a trial on the merits.

## **ARGUMENT**

## I.   **THE DISTRICT COURT ERRED BY RESOLVING FACTUAL DISPUTES AND FAILING TO TAKE THE FACTS AND INFERENCES IN THE LIGHT MOST FAVORABLE TO THE PLAINTIFFS**

The District Court erred in granting summary judgment for the Defendants by taking the facts, and inferences therefrom, in favor of the Defendants.  This is contrary to long standing case law and consequently, the District Court's order should be reversed and this case remanded for a jury trial on the merits.

In May of this year, the Supreme Court reiterated its long held standard on summary judgment when it vacated and remanded a decision from the Fifth Circuit in Tolan v. Cotton, 134 S. Ct. 1861 (2014). In Tolan, the Court noted that the Fifth Circuit "failed to adhere to the axiom that in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" Tolan at 1863 (quoting Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986)). Throughout this opinion, the Justices noted that the lower courts resolved factual disputes in favor of the defendant

(movant), despite direct contrary evidence put forth by the plaintiff, as well as took inferences from the evidence in favor of the defendant, when a jury could reasonably infer in favor of the plaintiff. See id. at 1866-68. The Court noted that:

> [W]itnesses on both sides come to [a] case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system. By weighing the evidence and reaching factual inferences contrary to [a plaintiff's] competent evidence, the court below neglected to adhere to the fundamental principal that at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party.

Id. at 1868. In this case, the District Court enunciated the proper standard for analyzing the facts in a summary judgment motion [Doc. 83 at 2]; however, it failed to apply these principles and instead took the facts and all reasonable inferences therefrom in a light most favorable to the Defendants.

Contrary to the District Court's Order, the facts and inferences in favor of the Plaintiffs are as follows: Bushway's comments regarding Plaintiffs' ages, nearing retirement, and J&J seeking longevity of continuing employees evidences his discriminatory intent or the discriminatory criteria of J&J or both; Bushway gave references to J&J as a supervisor and employee of Del-Jen; Bushway toured J&J employees and supervisors through the pest control department because Del-Jen was working in cooperation with J&J regarding the contract transition; J&J's after-the-fact reasons for not hiring Plaintiffs constitute pretext; Plaintiffs never suffered discipline during their long tenure at Del-Jen evidencing good work

performance; J&J's alleged reliance on Lawn & Ornament skills is false and belied by its own job description; J&J hired Plaintiffs' co-workers who had less experience and certifications than Plaintiffs; J&J knew of Plaintiffs' ages through first hand introductions and through circumstantial evidence on their applications and resumes; J&J certainly knew Miller's age as Bushway told him they did; J&J's interviews of Plaintiffs were a sham, or simply for show, when in fact they already made determinations based on Bushway's references and their determination to hire younger employees for "longevity."

The District Court failed to find the above facts and inferences in Plaintiffs' favor, thus violating long-standing law regarding the standard of review on a motion for summary judgment. See, e.g., Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986)(genuine issues of fact where such that a reasonable jury could return a verdict for the non-movant); Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999)("courts should view the evidence and all factual inferences therefrom in the light most favorable to the [opposing] party"); Morrison v. Amway Corp., 323 F.3d 920, 924 (11th Cir. 2003)(" the district court may not weigh the evidence or find facts.  Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party"); Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012)(courts "may not weigh conflicting evidence or make credibility

14

determinations"). Accordingly, this Court should reverse the District Court and remand this matter for a jury trial on the merits.

## II.    PLAINTIFFS ARE THE VICTIMS OF AGE DISCRIMINATION

Both Plaintiffs were the victims of age discrimination when Bushway gave the incoming employer ageist references precluding their continued employment from Del-Jen to J&J and were passed over for younger, less experienced co-workers. Plaintiffs suffered from age discrimination, as well as retaliation, when J&J once again failed to hire either Plaintiff when an opening became available, once again selecting a younger, less experienced applicant. The District Court erred in its analysis of Plaintiffs' *prima facie* case and should be reversed and this matter remanded for a trial on the merits.

### A. Plaintiffs Made Prima Facie Case of Age Discrimination

Although courts routinely use the McDonnell Douglas framework to examine discrimination cases, including age discrimination, there is no fixed methodology in which a plaintiff may prove his case. Rather, "the plaintiff will always survive summary judgment if he presents circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." Sims v. MVM, Inc., 704 F.3d 1327, 1334 (11th Cir. 2013)(age discrimination case), quoting Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011); see also, International Bhd. Of Teamsters v. United States, 431 U.S. 324, 358

(1977)(McDonnell Douglas "did not purport to create an inflexible formulation");
Swiekiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002)(requirements of a *prima
facie* were "never intended to be rigid, mechanized or ritualistic"); Wilson v. B/E
Aerospace, Inc., 376 F.3d 1079, 1087 (11th Cir. 2004)("[t]he methods of presenting
a prima facie case are not fixed; they are flexible and depend to a large degree
upon the employment situation.").

Plaintiffs have shown circumstantial evidence of discriminatory intent. Their
immediate supervisor, Bushway, told them that he was not going to "fight" for
anyone who was of retirement age and that J&J was concerned about age and
longevity. He further told the Plaintiffs that they did not fit in with retaining long-
term employees; they wanted younger employees who would "stick around for
awhile," and he told Miller that J&J was aware of Miller's age. He made these
statements as an employee of Del-Jen and as a prospective employee of J&J.
Indeed, J&J solicited references or recommendations directly from Bushway
regarding which pest control people to retain and he complied. The District Court
dismissed these comments, stating that Bushway made the statements after J&J
made the decision. [Doc. 83 at 6, 7]. However, this is error and takes the facts in a
light most favorable to Defendants. See Cottrell v. Caldwell, 85 F.3d 1480, 1486
n.3 (11th Cir. 1996)(trial court must accept the truth of Plaintiff's allegations and
evidence and "must draw all reasonable inferences in Plaintiff's favor").  From the

Plaintiffs' perspective, Bushway was not giving an after-the-fact rationale, but telling Plaintiffs directly why he did not recommend them for hire by J&J – he thought they were too old and J&J told him that they were looking for employees who would "stick around for awhile." This is evidence of Bushway's discriminatory animus or J&J's discriminatory standards for hiring or both.

Plus, it was not just the discriminatory comments Bushway made after Plaintiffs learned they were not selected by J&J for continued employment, but just a few months earlier, after Loberger's second on-the-job injury, Bushway commented that Loberger was getting older now, and injuries would just be a common occurrence. In addition, it was apparent during both Plaintiffs' interviews by J&J that there was no real interest in hiring either one. The interviews were perfunctory, neither was asked any question outside of what was submitted in their applications or resumes, Loberger's interview lasted no more than fifteen minutes, and Miller's interview lasted no longer than five minutes.

Even under a McDonnell Douglas standard, Plaintiffs can prove their prima facie case of age discrimination: (1) they are over forty; (2) subjected to discriminatory references and failure to hire (3) younger persons filled the positions; and (4) they were qualified to do the job. See Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1359 (11th Cir. 1999).

17

J&J claims that it did not have access to either one of the Plaintiffs' ages through the documentation submitted; however, both were physically, noticeably older than the three co-workers retained. Plus, Bushway told Miller that J&J was aware of Miller's age. At the time of the interviews, Loberger was sixty-six (66) years old and Miller was sixty-three (63). Meanwhile, Fox was only forty-two (42), Bailey was fifty-one (51), and Nowaczyk was fifty-three (53) years old. The smallest age gap between Plaintiffs and these three individuals totaled more than a decade. The fact that these three employees are also over forty (40) years old is of no relevance because the question in an ADEA case is whether the plaintiff suffered adverse action "because of **his** age." See O'Connor v. Consolidated Coin Caterers Corporation, 517 U.S. 308, 312 (1996).[1]

Further, Plaintiffs were discriminated against because of their ages when neither was selected for the September 2013 open pest control position in favor of a younger, less qualified individual. Bushway made this hiring decision and recommended Spragg, who is well over a decade younger than Plaintiffs and after interviewing Spragg though he failed to interview either Plaintiff. Further, Spragg

---

[1]    Likewise, Bushway's age is immaterial in examining his discriminatory intent. See Castaneda v. Partida, 430 U.S. 482, 499 (1977)("Because of the many facets of human motivation, it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group.").

did not hold all of the required certifications to serve in the position; however, Plaintiffs did have all required certifications.[2]

The fact is both Plaintiffs were qualified to do the job of pest controller; each had performed this job for approximately fifteen years and each met all of the requirements to continue doing this job under J&J. See Damon, 196 F.3d at 1360 ("if a plaintiff has enjoyed a long tenure at a certain position, [courts] infer that he is [ ] qualified to hold that particular position"). Further, neither was subject to disciplinary actions throughout their long tenure, evidencing that they were in fact good employees who performed their jobs according to expectations.

Finally, courts are even more likely to find a prima facie case of age discrimination where, in addition to a younger replacement, the plaintiff has shown other evidence of age discrimination, as Plaintiffs have done so here. The proper inquiry in this case is "whether an ordinary person could reasonably infer discrimination if the facts presented remained unrebutted." Carter v. City of Miami, 870 F.2d 578, 583 (11th Cir. 1989), citing Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1443 (11th Cir. 1985)); see also Douglas v. Anderson, 656 F.2d 528, 533 (9th Cir. 1981)(a plaintiff can satisfy his prima facie burden if replacement is only slightly younger if other circumstantial evidence

---

[2]    Plaintiffs also contend that the hiring of Spragg was retaliatory for their filing of internal grievances in November 2012, as well as their Charges of Discrimination in Februrary 2013 discussed in Section II, infra.

19

supports an inference of discrimination, such as evidence that he had satisfactory job performance). Certainly, an ordinary juror could infer age discrimination when Plaintiffs held their jobs for a significant period of time without reprimands and in addition to Plaintiffs' being passed over for continued employment by significantly younger co-workers, the person who gave bogus references for both Plaintiffs made brazen ageist comments.

### B. **Del-Jen Liable for Age Discrimination**

The District Court relied on <u>Moham v. Steego Corp.</u>, 3 F.3d 873 (5th Cir. 1993) in finding that Plaintiffs failed to make a *prima facie* case of age discrimination against Del-Jen. [Doc. 83 at 5]. However, <u>Moham</u> notes that the supervisors making the discriminatory recommendations were just an effort to help the new business "in starting up." <u>Id</u>. at 877. But <u>Moham</u> goes on to distinguish cases wherein the employer interfered with a plaintiff's access to employment, specifically, <u>Sibley Memorial Hosp. v. Wilson</u>, 488 F.2d 1338 (D.C. Cir. 1973), noting that such a case would be actionable. <u>See id</u>. This is what Bushway did in his position as a supervisor for Del-Jen, he gave discriminatory recommendations for the Plaintiffs to interfere with their prospect for employment with J&J. <u>See Hillig v. Rumsfeld,</u> 381 F.3d 1028, 1035 (10th Cir. 2004)(holding negative reference precluding future employment constitutes adverse employment action); <u>c.f.,</u> <u>Bailey v. USX Corp.</u>, 850 F.2d 1506, 1509 (11th Cir. 1988)(noting that

20

negative reference was de minimus because plaintiff sought, and obtained, reinstatement to civil service list). Bushway admits to providing recommendations/references, J&J admits to soliciting the same from Del-Jen supervisors, and that it relied on these references. Plaintiffs suffered more than de minimus harm from Bushway's comments to J&J, they lost employment, and this constitutes an adverse employment action. Del-Jen is liable for Bushway's discriminatory animus since he was serving as their employee, and supervisor, at the time. See, e.g., Staub v. Proctor Hosp., --- U.S. ----, 131 S.Ct. 1186, 1192-93 (2011)(noting that in the real world, decisionmakers rely on supervisors input); Sims v. MVM, Inc., 704 F.3d 1327, 1335-37 (11th Cir. 2013)(approving cat's paw theory in ADEA cases post-Staub, but differentiating the standard as "but for" in age claims rather than motivating factor). While the District Court attempted to turn Plaintiffs' claims on their head by stating that Bushway was not serving Del-Jen by giving bogus references, Bushway was indeed a supervisory employee engaged in typical supervisor work – providing references for his employees. As such, Del-Jen is liable for Bushway's comments interfering with Plaintiffs' prospective employment.

### C. J&J Liable for Age Discrimination

Alternatively, as to J&J, Moham supports the Plaintiffs' claims because Bushway could be seen as an agent for J&J in complying with their discriminatory

objective: to retain only those employees with longevity and younger ages comporting with the same. See id. at 876-877. Bushway knew about his pending employment with J&J when it asked him for references for all of his subordinates in the pest control department. [Doc. 43-4 at 4]. Taking inferences from his comments in the light most favorable to the Plaintiffs, demonstrates that J&J told him that "longevity" for future employees was a key factor and when he drafted his recommendations, he put the two oldest pest control workers, the Plaintiffs, at the bottom of the list. While it may be true that the term "longevity" used independently does not necessarily have a discriminatory connotation, the same is not true when used in conjunction with other factors, such as retirement or seniority, in which case it becomes a proxy for age. See U.S. EEOC v. City of Independence, Mo., 471 F.3d 891, 895-96 (8th Cir. 2006)(providing string cite of cases finding actions that serve as proxy for age discrimination). That is exactly what happened here – pursuant to Bushway's comments, Plaintiffs' ages were directly tied to the term "longevity," the employment criteria for J&J. Moreover, when J&J conducted its interviews, it was uninterested in actually learning or hearing about Plaintiffs' experiences, or even engaging either in any way – the process was short and seemed to be a sham formality that it went through after receiving the recommendations from Bushway. And then, despite the fact that Plaintiffs were long time employees who had extensive experience, credentials,

and every required certification to be a pest controller, J&J turned them away without a word. The factor that made the difference was Plaintiffs' ages and J&J is liable for age discrimination.

Plaintiffs made their *prima facie* case of age discrimination, which is not an onerous burden nor subject to overly strict formulation. See Patterson v. McLean Credit Union, 491 U.S. 164, 186 (1989); see also, Watson v. Fort Worth Bank and Trust, 487 U.S. 977, 986 (1988); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

## III.    PLAINTIFFS ARE THE VICTIMS OF RETALIATION

Plaintiffs are the victims of retaliation due to J&J's failure to hire either one for a vacant pest control position in September 2013.[3] They have shown a *prima facie* case in that they engaged in protected speech by filing their EEOC Charges of Discrimination in February 2013; they were not hired for the open pest control position; and there is a causal connection between these two actions. See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1277 (11th Cir. 2008).

---

[3]    Loberger also claims retaliation against Del-Jen for the failure to provide a positive reference to J&J in October 2012 because of his two incidents of on the job injuries earlier in that year; in other words, in retaliation for workers' compensation injuries. However, the District Court did not rule on this count and declined to retain jurisdiction upon ruling for summary judgment on behalf of the Defendants on Plaintiffs' federal claims. [Doc. 83 at 9]. As such, Loberger's workers' compensation retaliation claim is not before this Court and Plaintiffs will not address it for this reason.

The District Court erred by failing to find that Plaintiffs' EEOC Charges constituted protected speech and only focused on the grievances that Plaintiffs filed with their union a week prior to their termination. [Doc. 83 at 8]. In fact, the District Court does not even mention Plaintiffs' Charges; however, the protected conduct that led to the retaliation by J&J was the EEOC Charges – not the grievances.[4]

There is no dispute that neither Plaintiff was hired for the open position in September 2013. Further, Bushway was in charge of selecting Nowaczyk's replacement and he admits that he knew Plaintiffs had Charges pending with the EEOC at the time.

As to the causal connection, it is not "the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action" that would "rise to the level of direct evidence of discrimination." Simmons v. Camden County Bd. Of Educ., 757 F.2d 1187, 1189 (11th Cir. 1985). Rather, this Court "construe[s] the causal link element broadly so that 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Bagby Elevator Co., Inc., 513 F.3d at 1278, quoting Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998). The

---

[4]    To be clear, Plaintiffs are only alleging age discrimination retaliation against J&J, not Del-Jen; Plaintiffs agree that their initial protected speech, their grievances, were submitted after the initial hiring decisions made in October or November 2012.

bottom line is that the plaintiff must demonstrate a connection between his protected activity and adverse employment action that could "reasonably support [a] jury's determination." Olmsted, 141 F.3d at 1460.

Plaintiffs acknowledge that seven months passed between filing their CODs and applying for the open pest control position. However, this time gap does not bar their retaliation claims and they can show a causal connection because this was the **first opportunity** that J&J had to exact retaliation against them – this was the first open position in the pest control department since J&J took over the TAFB contract. See e.g., Bagby Elevator Co., Inc., 513 F.3d at 1285 (holding employer demands of arbitration agreement, eight months after plaintiff filed charge of discrimination not too far removed); Martin v. Mecklenburg County, 151 Fed. Appx. 275, 280 (4th Cir. 2005)(stating that employer took action against plaintiff at the "first opportunity" after learning of protected conduct); Porter v. California Dep't of Corr., 419 F.3d 885, 895 (9th Cir. 2005)(temporal delay due to fact that harasser unable to exact retaliation until promotion to supervisory position); Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004)(holding that plaintiff made prima facie case despite lapse in time in that jury could reasonably conclude failure to hire was the first opportunity to retaliate); Ford v. General Motors Corp., 305 F.3d 545, 554-55 (6th Cir. 2002)(actionable retaliation found despite five month interval because at that time, plaintiff placed back under the harassing supervisor and it was

his first opportunity to retaliate after protected conduct); <u>Kachmar v. Sungard Data Sys., Inc.,</u> 109 F.3d 173, 178 (3d Cir. 1997)(stating that temporal gap may be explained through "valid reasons" that do not disprove causation). These cases support Plaintiffs' case that J&J took the first opportunity it had to retaliate against them.

Plaintiffs made their *prima facie* case of retaliation, which again, is not an onerous task. <u>See Vessels v. Atlanta Indep. School Sys.,</u> 408 F.3d 763, 769 (11th Cir. 2005).

## IV.   DEFENDANTS' REASONS FOR NEGATIVE REFERENCES AND FAILURE TO HIRE ARE PRETEXT FOR DISCRIMINATION

The District Court further erred in failing to find Plaintiffs demonstrated pretext for J&J's failure to hire them; it did not even examine pretext in relation to Del-Jen. [Doc. 83 at 5-7].

In order to show pretext, Plaintiffs must "demonstrate that the proffered reason was not the true reason for the employment decision… [Plaintiffs] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." <u>Texas Dep't of Cmty. Affairs v. Burdine,</u> 450 U.S. 248, 256 (1981). In evaluating a summary judgment motion, the district court must evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in

the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir.1997). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 526 (11th Cir.1994)(citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502 (1993)). Further, the trier of fact is permitted to consider the evidence establishing a plaintiff's prima facie case and inferences drawn therefrom on the issue of whether the defendant's proffered reason is pretextual. <u>See</u> <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 143 (2000).

The District Court erroneously took J&J's alleged non-discriminatory reasons while disregarding Plaintiffs' arguments and facts to the contrary. <u>See</u> <u>Jones v. UPS Ground Freight</u>, 683 F.3d 1283, 1292 (11th Cir. 2012)(courts are not permitted to "weigh conflicting evidence or make credibility determinations" when ruling on summary judgment). It held that Plaintiffs admitted that: "Loberger preferred to work on paved areas over other zones. Miller was not a hard worker who sometimes had trouble getting along well with others." [Doc. 83 at 7]. It is disputed that Miller had "trouble getting along well with others" – both Plaintiffs testified that prior to their termination at Del-Jen and non-hiring by J&J, they got

along well with all of their co-workers, including Bushway. The "fact" that Miller was not a hard worker is belied by the evidence – he never received any reprimands during his fifteen year tenure at Del-Jen (and neither did Loberger). While Loberger did testify that he enjoyed working on the flight line the best, he said this in direct response to a question regarding his preferences during his deposition and he stated the reason why was because "[t]here were more weeds to kill." [Doc. 54-19 at 69]. This preference does not negate his skills. Most people in the workplace prefer certain tasks over others, but this aspect of human nature does not make them unqualified for their positions nor indicate that they cannot or will not do their job as assigned.

But, more importantly, none of these reasons were articulated to Plaintiffs at the time that Bushway described why he would not "fight" for them or when he told them the attributes that J&J was looking for in employees. Instead, he told them that they were old and at retirement age and that J&J wanted youth and longevity. Rather, these are after-the-fact crafted rationales for providing discriminatory references and failing to hire the Plaintiffs. In other words, the Defendants' alleged rationales did not motivate their decisions at the time; this is classic pretext. See Walker v. NationsBank of Florida N.A., 53 F.3d 1548, 1564 n.7 (11th Cir. 1995)(pretext demonstrated if "the proffered reasons did not actually motivate the employment decision"). Bushway did not tell Miller that he was not a

hard worker or that he did not get along with co-workers and as such he could not recommend Miller. Bushway did not tell Loberger that he did not like Lawn and Ornamental (L&O) work and because of this he could not recommend Loberger for continued employment. No, Bushway told them both that their ages and nearing retirement did not fit with the goal of longevity.

The District Court also accepted that J&J "believed that Plaintiffs did not perform Lawn & Ornamental ("L&O") work." [Doc. 83 at 7]. Frankly, this is completely untrue. Both Plaintiffs' applications listed this as one of their certifications. [Doc. 54-6 at 8, 13; Doc. 54-10 at 4, 11, 17]. Further, J&J's overblown emphasis on L&O work as the key to hiring pest control workers is belied by its own job description, which lists this as only one of five mandatory certifications. [Doc. 54-5 at 3]. Fox did not even possess one of the required certifications, Termite Control. [Doc. 54-4 at 3]. And, Spragg, hired in September 2013, admitted that he did not have two of the mandatory certifications: Right of Way and Public Health. [Doc. 43-14 at 2]. Plaintiffs, on the other hand, held all of the mandatory certifications.

The District Court erred in accepting these after-the-fact rationales as J&J's business judgment. [Doc. 83 at 7]. But, a defendants' alleged non-discriminatory reasons are not subject to absolute deference by the courts. The "decision to [take an adverse action against] an employee based upon unlawful considerations does

29

not become legitimate because it can be characterized as a business decision," E.E.O.C. v. Yenkin-Majestic Paint Corp., 112 F.3d 831, 835 (6th Cir. 1997), and the fact that the action is "harsh or unreasonable" is certainly probative evidence that the asserted reason may not be the actual reason animating the employer's decision. See e.g., Burdine, 450 U.S. at 259 (1981)("the fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination"); Wichmann v. Bd. of Trs. of S. Ill. Univ., 180 F.3d 791, 805 (7th Cir. 1999)("a defendant cannot escape the fact that a jury must use its good common sense in addressing how much, if at all, the foolishness or unfairness of the employer's decision weighs in the evidence of pretext"). By granting even incredible explanations presumptive validity, the "business judgment rule" short-circuits this well-settled means of proving discrimination. Defendants' after-the-fact rationales, together with the evidence of Plaintiffs' *prima facie* cases argued in Sections II and III, supra, demonstrate "weaknesses" and "incoherencies" such that "a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir.1997).

Finally, the District Court held that Plaintiffs cannot show that the retaliation was "but for" their age. [Doc. 83 at 8]. The District Court states that this is a "high

30

burden" – but fails to define it. [Id.]. The District Court erred on this point as well, because again, it analyzed the retaliation claim only in light of the Plaintiffs' grievances and not their Charges. The fact is that the hiring supervisor was Bushway, Plaintiffs' former supervisor, and he testified the he was aware of their Charges. Further, Plaintiffs have met their burden under both Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009) and University of Texas Southwestern Med. Ctr. V. Nassar, 570 U.S. ----, 133 S.Ct. 2517 (2013), because "but for" does not mean "sole cause" but rather a deciding factor.

The Supreme Court held in Gross that "but for" the plaintiff's age would the discriminatory action occurred is the standard for age discrimination; likewise, in Nassar, the Court held that "but for" is the standard for retaliation claims. The Fifth Circuit Court of Appeals held in an ADEA case that "but for" does not mean "sole cause;" rather, it means that the protected activity or characteristic "was the factor that made a difference." Leal v. McHugh, 731 F.3d 405, 415 (5th Cir. 2013), quoting Jones v. Oklahoma City Pub. Schs., 617 F.3d 1273, 1277 (10th Cir. 2010). And, in January of this year, the Supreme Court further expanded on what "but for" means, albeit in the context of a criminal matter, citing to Nassar. See Burrage v. United States, 134 S. Ct. 881, 887-889 (2014). Justice Scalia explained that a variety of factors may be at play in a given scenario, but if the other factors standing alone would not have produced the same outcome, then it was "but for"

the final or determinative act – "the straw that broke the camel's back." Id. at 888. Plaintiffs met their burden of showing that Defendants' actions against them were made "but for" a discriminatory motive to not hire older workers; Bushway's comments make this clear. The Plaintiffs' ages were the factor that made a difference.

Plaintiffs have shown through their *prima facie* case as well through pretext that their age was the deciding factor for Del-Jen's negative recommendation, and J&J's failure to hire them in the transition in November 2012, as well as for the open position in September 2013. A rational jury could certainly find Defendants' reasons for refusing to hire Plaintiffs suspect or "unworthy of credence" and infer that the Defendants are "dissembling to cover up a discriminatory purpose." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000).

## CONCLUSION

The District Court erred in finding that Plaintiffs failed to prove prima facie cases of age discrimination and retaliation or that Defendants' alleged reasons for their adverse employment actions were pretext for discrimination. This requires reversal and remand for a jury trial on the facts in dispute.

32

Respectfully submitted,


/s/  Marie A. Mattox
Marie A. Mattox
Florida Bar No. 739685
James P. Garrity
Florida Bar No. 539211
Marie A. Mattox, P.A.
310 East Bradford Rd.
Tallahassee, FL 32303
(850) 383-4800 (telephone)
(850) 383-4801 (facsimile)
ATTORNEYS FOR APPELLANTS




## CERTIFICATE OF COMPLIANCE

I hereby certify in accordance with FRAP 32(a)(7)(c) that this brief complies

with the type-volume limitation specified in Rule 32(a)(7)(B). Specifically, it

contains 7,498 words in the Brief.


/s/  Marie A. Mattox
Marie A. Mattox

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been sent via CMF and U.S. Mail to the attorneys identified below this 6th day of October, 2014:

Patrick L. Lail
Sean M. Libby
ELARBEE, THOMPSON, SAPP & WILSON, LLC
800 International Tower
229 Peachtree Street, N.E.
Atlanta, Georgia 30303

James W. Seegers
BAKER & HOSTETLER, LLP
Post Office Box 112
200 South Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32802-0112

/s/  Marie A. Mattox
Marie A. Mattox

34